Let's turn next to case 19-485, United States of America versus, is it Melhuish or Melhuish? Mr. Bryan, how do we pronounce your client's name? Melhuish. Melhuish, thank you. And I just want to make sure we have good connections where you can hear us and we can hear you. Mr. Bryan? Nice to hear you. What's mine? And Mr. Silver? I hear you well, your honor. And the same here. Thank you very much. So, Mr. Bryan, I understand you have reserved one minute for rebuttal. So why don't you take it away? Thank you, your honor. Good morning. May it please the court. I'd like to focus my argument this morning on point two in the appellant's brief and the contention that it was error in how the district court judge handled the jury note that it was deadlocked and could not reach a verdict. And I submit there are three reasons why it was error and that reversal is appropriate. First, that the judge didn't file a procedure of this court, as reiterated in Meta. And among things, it was that defense counsel had to have an opportunity to suggest a response, and particularly with a deadlocked jury suggesting and now in charge. Second, that the manner in which the judge responded by a note alone from the judge was an ex parte communication. And third, that what the judge said was unguided, unbalanced, and induced unanimity. I'm turning to the first reason that defense counsel was not provided an opportunity to suggest a response. The government concedes in its brief that this was clear error. The government takes issue with whether it affected substantial rights. I submit that there are a number of things in the record and the appellant's brief in which it showed and provided evidence of affecting her substantial rights. First is, and it's under the case law, that this is a critical juncture. When a jury gives a note saying that it is deadlocked, saying that it cannot reach a verdict, that in and of itself is something affecting the substantial rights. If you think about it, you know, there's nothing more important to a defendant than when either the jury reaches a verdict or it's saying it can't reach a verdict, which in effect is a verdict at that time. And the question then becomes, will the judge nonetheless have the jury continue to deliberate? But there's more here, and this is out of the case law also. And you look at the time span between when the judge gave the charge in the afternoon, which was the note was dated or it's timed as at three thirty in the afternoon. Now, of course, there's some kind of time frame after that of communication to have the attorneys go into the courtroom. The judge did not go in the courtroom. The court clerk went in the courtroom and they're notified simply the judge is going to give them this note with no opportunity to respond. There's about, I would say, two hours. They stopped deliberation at six and then they came back to court, started deliberations the next morning. And it's only eight minutes after that that they return a verdict of guilty. That time frame is consistent with the short span stated by this court in Krish, which was two hours. And the court said that was short. I think there's an aggravating factor here. Yes. Can I just go back a little bit in your discussion? And I tend to agree with you that procedurally the court did not follow any of our advice on how one ought to deal with a jury note. I understand that. So if we could just look at the specifics, though, of the Allen charge, and it's my understanding he said and tell me if I'm reading the right part that you're claiming is that you don't have to give up your individual beliefs as you hold them, but you can examine the logic of both sides and try to work out a disposition that will accommodate everybody's beliefs after hearing all the evidence. And I guess it's that language that you say is erroneous and therefore prejudicially erroneous. Am I focusing on the right language? Let's just start there. No, there were two things said by the judge here. In the first day at issue, it's in the afternoon, three-third in the afternoon, about four o'clock or so. The judge gives the following, sends a note to the jury, apparently handwritten, but on the jury's note saying we are deadlocked, saying, these are the words, continue your deliberations until you reach a unanimous verdict. I will tell you that language there is under the case law, I submit, seriously wrong. The next day. Counselor, can you stop there before you do that? I believe I have a quote. I'm not sure that it's accurate. Please continue to deliberate until you have reached a unanimous verdict. If you need help on anything, please ask. Yes. How does that differ from the instructions that would be given generally for any charge? Aren't you supposed to deliberate until you reach a verdict? You can't deliberate. You got to keep going. And at some point you're going to say, well, we can't, you know, we can't. But he's asked them to deliberate until you reach a verdict. It has two problems. Actually, really two parts of what was said that created very serious problems. First is continue to look to deliberate. Now, under the case law of this court, Mehta, Mejia, Krish, when a judge receives a note that the jury is deadlocked and only says to the jury, continue to deliberate. Without the balancing language of guarding individual rights of dissenting jurors, that is error right there. That actually, according to this court's case law, may induce unanimity. Now, we have something more serious here. And what it is, is that we have the second clause of that statement that Judge McAvoy said. And the second clause was until you reach a unanimous verdict, we don't have a situation of may induce unanimity. We have an instruction to inducing unanimity. So we have a very serious, erroneous instruction, ex parte, to the jury. Now, the second note, and I can the next day might as well talk about it now. Is there real problems with that? If we look at it, it does not comply with the safeguard. First of all, the judge said he was going to give an Allen charge 45 minutes later. So this was not the judge's Allen charge. That happened the next day. It was actually an off the cuff and problematic statement to the jury. The judge did say, I'm going to tell you, guard individual beliefs or, you know, don't have to surrender individual beliefs. But then the judge said, and this is very problematic and it's the word accommodate. So he says, we keep going, try to work out a disposition or in other words, a verdict that will accommodate everyone's individual beliefs. Well, if you look at the meaning of the word accommodate, I looked it up in Webster's and, you know, the Latin root and it has several meanings, several synonyms. And I'll repeat them. It means to yield, means to compromise, means to adjust, means to adapt. So what happens here is while on the one hand, the judge has said, you know, don't surrender your individual rights, he takes it back in the next clause. Now, here's something else that I think is very important to consider. And that is what the judge said the next day. He's not commanding them to do that, though. He's saying, you know, how is what he said any different from just asking them to to continue discussing, to try and reach a common consensus? There's nothing wrong with that. That's that's their job. Well, yes, except he says he tried to work out a disposition that will accommodate. No, he doesn't say you must work out a disposition that will accommodate everybody's beliefs after hearing all the evidence. He says you'll try to do that, but you don't have to give up your individual beliefs as you hold them. And you can examine but you can examine the logic of both sides. That's what you're supposed to do. In other words, you're not going to sit there in isolation. You're going to talk. Yes. Yes, Judge Walker. And as I say, I think there's still a real problem with the language. Let me say something else. And I think this is very important. It doesn't matter what the judge said at that point. And the reason is it did not save the damage that the judge had done the day before by the clearly erroneous language used by the judge. And here's the reason. If there were still dissenting judges, dissenting jurors around the next day that had not already been influenced by the judge's erroneous instruction that induced unanimity, they still would have been there the next day. So here is an instruction. If you think about what the judge says, the judge is saying, look at the logic of both sides. And if you're a dissenting juror and the dissenting jurors still there, look at the logic of both sides and then compare the evidence and try to work something out. Well, the judge is expressing something that should take hours or even days. And yet they render a verdict in eight minutes. What does that mean? There was no dissenting juror at that point. The judge's instruction the day before already had its poisonous effect. The dissenting jurors were gone. I'm trying to keep track of my time here. One last thing I'd just like to the government has talked about trying to say this wasn't an ex parte communication and trying to say, well, only in person is ex parte. And that's that's just not true. Meda says an expert, something communicated in an ex parte manner. Well, of course, that's in person. That's by in writing, anything like that. They're the same problems here with this note that happened the day before. If you think about it, every other note is then reported where the jury is brought into open court after discussions with the with counsel. And then the jury with the jury present their notes read back. The judge gives the instruction. It's all public. Here we have a note that that can give and I'm using the court's language can give a misimpression that it expresses a judge's personal view. It's handled differently than every other note that has as were handled correctly in the procedure correctly. So there's a real problem that a jury can get the idea. You know, the judge is telling us, hey, forget about that. You're deadlocked. Reach a unanimous verdict. And those were the only words. If I rely on my brief for my remaining arguments, thank you. Actually, I'm going to hold you up there a little bit, Mr. Brian, if you don't mind, then I apologize. That we can't hear you, Judge, everyone that I fell off and my eye. Can you hear me now? Now I can. Yeah. Can you hear me at all? Better. OK, I'm sorry about that. I did warn everyone of the possibility of technical difficulties, and it turns out I'm the one. I appreciate, Mr. Brian, all your arguments. I would actually ask you a couple of questions if I may. Can you can you hear me? I can now. Yes, your honor. Now I can. All right. I'm sorry about this. And if I die, I die. Now, we're going to do this. Well, let me try to ask if you can hear your question. Can't hear you. Can't hear you, Judge. Not a word. You want to stand down for a minute and see if you can reconnect? Or phone in. My question is point one. Yeah, let me do that. Let me call in. I will stand down for a minute. Oh, my God. Enter your participant ID followed by pound. Otherwise, just. Good. Brother Nardini has a massive snowstorm in Connecticut, whereas Brother Walker and I are elsewhere. Yeah, you're in Syracuse, aren't you? Well, I'm in Florida. Okay. Okay. So, wait a minute. So, what am I doing? You what am I doing? Muting? Yeah, I'm just a zoom call and talking on your telephone. Does that work better? Does that work better? Yeah. Yes. All right. Well, thank you all for your patience. And I apologize for not having a good Internet connection here. But yeah, the foot of snow apparently has done some damage up here in Connecticut. So, Mr. Brian, thank you for your patience. I was going to ask you to address point one. And the first question I'd like to ask you, and this is something that the government raised in a follow up letter, which was to the extent that we have an ineffective assistance claim. Do you agree that 2255 is simply an option that's off the table, given that your client is no longer in custody in any form? So that to the extent that there would be a procedural vehicle for addressing her ineffective assistance claim, it would have to come in the form of a remand. Yes, Judge. I agree that 2255 is not an option for her. I would also say that I think this record is such that it is appropriate on direct appeal to address this issue. I'll say why. Normally, the government's talking about whether this is trial strategy, and normally it is why did an attorney not do something? And here, so it could be why did the attorney decide not to introduce mental health evidence? That's not what the clear strategy in the record was here. The strategy was of defense counsel to introduce mental health evidence into the record. The deficient performance was that the counsel did not correctly understand how to do it or follow the proper way. And the proper way was counsel had to get an expert. And counsel had to give notice to the government within the correct time frame that they would introduce expert evidence. Instead, counsel thought that he or she could elicit the mental health evidence from the defendant that it was procedurally improper. She could not obtain evidence in that manner. I guess my general concern with the idea of resolving ineffective assistance on a cold record, so to speak, is that we never know what the answer might be if we were to talk to the defense counsel and find out. It is hard for me to imagine what the strategic or tactical reason might have been for the course that counsel took. But I suppose I could imagine a world where the client, for some idiosyncratic reason, wanted to insist, for example, that there be no expert testimony and that she very much wanted to make the pitch coming from herself, but only in that way. It seems like she had a number of very idiosyncratic views in other respects here. I guess it seems hard for me to imagine how we could decide the ineffective assistance claim without making assumptions about what may or may not have taken place in discussions between counsel and the defendant. I guess that is my concern here. I do not see how we can decide the objective reasonableness of the counsel's decisions without knowing the framework within which he was constrained to make those decisions. Do you know what I mean? I do, Judge, and I appreciate what you are saying. My argument is that this is one of those more rare situations in which the record is sufficient to resolve this claim in that the record is clear here, and it is in the record that counsel repeatedly during the trial attempted to introduce the mental health evidence record, but in the wrong way. And Judge McEvoy said, no, you are wrong. You should have called an expert witness. And that is the essential deficient performance. To what end? I have got a couple of questions. To what end? If this is not a specific intent crime, but just a consequence crime where if she does the act, she bears the liability, this is the felony side of it, right? If her intent is irrelevant, then how is her mental state relevant? Well, Judge Wesley, you are hitting the tough question, in my opinion, and that is that I think it is a question of first impression for this court. Multiple other circuits have held that it is a general intent crime. I think there is, and it is expressed in the appellant's brief, that the element here is willfulness, and as such, it is a specific intent crime. This court has decided certain opinions in that direction, although it has not taken the last step to this felony situation, but in simple assault. Basically, the statute itself does not say. Right. The statute does not help us much. You and I see the problem the same way. Let me ask one other thing in terms of the availability of habeas relief. Aren't there collateral consequences here for her that are relevant to the conviction and the legitimacy of the conviction that arise out of or might be remedied by the ineffective assistance claim, that being the immigration consequences? She is not in custody, obviously, and she has done her supervised release, so she does not meet that custody issue, but does the conviction in some way have a collateral consequence such that the conviction's legitimacy remains or has a significant connection that it might fit within those types of cases where habeas relief remains available, notwithstanding the fact that no longer physically in custody? I suppose, but I don't think you'd have to go into speculation as to whether this event would happen. One speculates as to whether one subsequently convicted of another crime and that they would increase penalties, and that's adequate. Let me ask this, if we raise that issue or we express a concern about it, are you prepared to submit supplemental briefing on the matter? I will do whatever the court requests me to do. I have a question on the ineffective assistance, and I don't have the answer, but I'm raising it for thought, that there's an extraordinary remedy of coram nobis that doesn't have all the constraints that habeas corpus has, that sometimes is used to correct a judgment below, can result in a hearing, and have the same virtual same effect as if she were in custody and going by habeas, and I wondered if anybody had explored that one. I know in the government's rule 28J letter to the court, it had mentioned that she had the coram nobis remedy. Right, well, that might be the answer. Go ahead. No, that's fine. There's an analog on the state side. I know we used to see that periodically where the state habeas remedy was no longer available. Coram nobis does become, at times, available. So that's something to think about. Well, thank you, Mr. Bryan. Thank you for your patience with the technological issues. You have reserved one minute for rebuttal, so we'll see you shortly, but in the meantime, why don't we turn to the government, and Mr. Silver, you have 10 minutes. Let's hear from you. Thank you, Your Honor. May it please the court. With respect to the ineffective assistance of counsel claim, it seems to me in the government that it's really impossible, not just difficult, to determine why counsel did what counsel did here in deciding not to offer this mental health evidence. As I did say in my letter to the court, first of all, I apologize for writing the brief as if 2255 was an available remedy. That occurred to me later, not without some prodding from others, but it is my error. But it seems to me that there is a law indicating that coram nobis is, in large measure, the functional equivalent of a 2255 motion for a person who is not in custody. Judge Wesley raised the question of whether there are collateral consequences. There may be collateral consequences here because of the pending immigration proceedings, but I think that's insufficient to make 2255 an available remedy in the absence of custody. I think coram nobis is the appropriate remedy for this defendant. Just briefly, I don't want to get too far afield here, but in order to obtain coram nobis relief, there has to be a sufficient compelling circumstance that granting the writ would achieve justice. I think it's likely, without binding my client in any way, that having received ineffective assistance of counsel would meet that requirement. There have to be sound reasons for failing to raise the issue earlier. I think it's fair to say that the pendency of an appeal where the issue was raised would indicate that that's why coram nobis was not sought earlier. And the petitioner must suffer consequences as a result of the conviction, which I don't know the answer to that, but I suspect that there may be consequences in the immigration proceedings. In the event, I would recommend to the court that it not reach the ineffective assistance of counsel claim on this record. I don't think it's possible. I do think that coram nobis is the appropriate remedy. And Mr. Silver, since we're talking about this procedural vehicle, why would coram nobis be preferable to simply remanding it now? Well, I can't say that it's preferable. I can say that in my experience, this court has only remanded essentially where there are one of two circumstances present to resolve an ineffective assistance of counsel claim or even some other claims. One is where the district court in some way or another addressed to some degree or another the claim that's being raised on appeal. And that just didn't happen here. The district court never addressed the ineffective assistance of counsel claim. Secondly, if there's a need for expedience, like a defendant who is in custody and has been for some time, maybe should not be required to bring usually a 2255 proceeding and all of the time constraints with bringing a new petition, having it addressed by the court, having someone respond and the like. So I can't say that it's more or less preferable, but remand generally, in my experience, has not been utilized by the court in similar circumstances. Okay. Thank you. I have a question about the other argument that's being made here on the jury note. Yes, sir. And what is your view of your adversary's argument that when Judge McEvoy said, please continue to deliberate until you have reached a unanimous verdict. If you need help on anything, please ask. But that itself was coercive, even though on its face, it appears to be consistent with what the general charge was about. With all due respect to my very able adversary, there's something nonsensical about the argument, I think, that he makes with respect to that note by the court and the comments the following day. An Allen charge is coercive, and that's why the court has indicated that that coercion has to be balanced by other instructions to the jury. I cannot perceive anything coercive with respect to what you have just read, Judge Walker. And I know it's a minor point. I'm almost afraid to raise it. But my adversary, Mr. Bryan, kept saying that the court said to the jury, continue to deliberate until you reach a verdict. Well, he said, please continue to deliberate until you have reached a unanimous verdict. And I realize that that's a small point. But I do think it puts a little different emphasis on how the court was addressing the jury through that note. I disagree with something Mr. Bryan said, which was that the government conceded that there was no opportunity to respond to the district court's note that was sent to the jury on the first day of deliberations. When the court clerk came into the courtroom, concededly an erroneous procedure. There is no reason why defense counsel could not have said, we object to that. That language is inappropriate. We object to the jury not being brought into the courtroom, as it's supposed to be done in every case. And no objection was made. And when the judge later took the bench on the same day, he confirmed with counsel that they had been advised of the note before it went to the jury. And again, no objection was made to the district judge at that point. So all of these issues about the juror note and the court's comments the following day have to be reviewed under plain error analysis. And there was procedural error. Mr. Silver? Yes, sir. I apologize. I was muted. So I started talking to realize you couldn't hear me. What troubles me is that this seems to be a regular practice with Judge McEvoy. Is this a standard operating procedure for Judge McEvoy that he had he actually, do we know if he'd left the courthouse? This case was tried. I've been looking at the transcript. It was tried in Binghamton, his hometown. It's a jury note in the afternoon, and apparently communicated by telephone. And then the note goes into the... What's going on here? As an officer of the court, as a representative of the U.S. Attorney's Office, is this a regular occurrence with Judge McEvoy? I want to know. Your Honor, I do not see in the record, and I may have missed it, where you're indicating that the substance... Did he appear in front of the jury? He did not, but I don't think there's anything in the record. Is this a regular practice? And then let me make it easier. Is this a regular practice for Judge McEvoy? Because this is the second case now we've seen. The other one in which we criticize this practice actually occurred after this trial, so I understand that. But this is twice now. Is this a regular practice for Judge McEvoy to take notes from the jury, to then construct a note, maybe tell the lawyers about it? He didn't tell them in person. Did he? No. He sent the court clerk into the courtroom. The court clerk into there. Okay. So if he was there, he then sent the court clerk in. He didn't go in. And then his communicator. Is this a regular practice for Judge McEvoy? Not to my knowledge, Your Honor. And I would say there were other notes in the context of this very case where Judge McEvoy handled them appropriately. And so there's nothing to suggest that he routinely does this. But if I may, Your Honor. Another case that we've commented on. Actually, Your Honor, I have to concede in meta, what the court did was egregious. And nothing like what happened here, where the judge went himself to the jury room to discuss matters. Here, there was notice to counsel. The substance of what was going to be communicated to the jury was made known to counsel. And then it occurred. And it was not in person by the judge. But if I may, Your Honor, you indicated. Can I just insert something here? My understanding from the chronology, at least, that you put in your brief, is that after the initial reading by the clerk, if you will, of the judge's response to the first note, there was a recess. Then the district judge returned to the bench and confirmed with counsel that the court had read jury note two. So he was in the courthouse, presumably. In the courthouse. Yeah. Okay. I apologize for that. I misunderstood. Judge Wesley, you made a reference to something being communicated by telephone. I apologize if I missed that in the record, but I don't think that's in the record. Anything suggesting that the judge communicated with the court clerk or counsel by telephone. You know, it's my understanding and experience that very often a jury will come back and say they can't reach a verdict. And the judge wants them to continue to deliberate, but doesn't want to give them, it doesn't automatically trigger an Allen charge. The judge wants them to continue to deliberate before the Allen charge is given. And an Allen charge is sort of a last, more of a last resort. And this seems consistent with that practice. I mean, obviously there were also, everybody concedes that there were procedural errors here in the way, the way the judge handled the notes. But, but the idea that you would continue to deliberate an Allen charge is given and that the judge would advise you to do that is not unusual. I agree with that wholeheartedly. I did a quote in my brief language that the district court said while in court with counsel that he wanted to avoid giving an impression or trying to coerce the jury into reaching a verdict. And that's why I say it's a little bit nonsensical to say that this language was coercive, where it's really the Allen charge that a court gives when coercion becomes necessary or advisable. I just don't see anything coercive about the language that Judge McEvoy used with the jury here, notwithstanding the error in the procedure. I'm over my time. If the court has no other questions, I'll rely on my brief. Thank you very much. And why don't we turn to Mr. Brian, you have one minute reserved for rebuttal. Thank you, Your Honors. First of all, I'd like to bring to the court's attention the cases of Magia and Krish. And they are both cases in which the only thing that was said to the jury was continue to deliberate. In fact, in Magia, that wasn't even said. Magia was a case in which the jury sent a note that it was deadlocked, and it gave a vote count of what the deadlock was. The judge returned a case to the jury in which the judge said, don't tell me the vote count. But the judge said nothing about continue to deliberate. This court said it was, in effect, an instruction to continue to deliberate, and because it did not have then the balancing language of protecting and not surrendering individual rights, it was reversed. Krish was very close to this case. Krish was a courtroom clerk that was sent in the jury room, and the note back to the jury was continue to deliberate. It's not enough time. That's the only thing that was said. This court said that was reversible. And then the government, last item, talked about plain error. I think it would be helpful for me to talk to the court about that. The government is saying this is purely a plain error case. I think there was a non-contemporaneous objection made the next day, and that was to what the judge said. The counsel said to the judge, you told a jury who said they couldn't reach a verdict to reach a verdict. You gave no parameters for the jury to go by, in other words, protecting the not surrendering individual rights, and asked for an immediate charge. If we look at MEDA, and this court in MEDA cited both standards of harmless error and plain error. I looked at the case. I didn't see what this court relied on there, but I think the essence of the case was under either standard, the case reversed. And if we look at harmless, so if we look at MEDA, we look at the facts of MEDA, there really wasn't an objection. There was no objection to that the defense was denied the opportunity to suggest a response to the jury. There were discussions like, well, maybe the jury didn't get it accurately. Gee, I didn't see the transcript, but that was it. There was not an objection. And so under either standard or both standards, this court reversed. Last thing is just a little mention of plain error. The Supreme Court in Olena talked about the difference between plain error and harmless error and Rule 52. And essentially, when you're talking about whether it affects what's done, affects substantial rights, harmless error and plain error are the same thing under Rule 52. The difference is whether there's an objection or not. If there's an objection, then it's the government that has the burden of persuasion. If there is not an objection, it is the defense that has the burden of persuasion, but that is the only difference. Thank you. Thank you very much to both counsel. That was very well argued, and we very much appreciate your help with this difficult case. So we'll take that under advisement.